# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GRACE COMMUNITY CHURCH,

        Plaintiff,

Case Number: 06-13526

v.

JUDGE PAUL D. BORMAN

LENOX TOWNSHIP,

UNITED STATES DISTRICT COURT

        Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL WAIVED ATTORNEY CLIENT LETTERS (DOCK. NO. 42)

Now before the Court is Plaintiff's Motion to Compel Waived Attorney Client Letters (Dock. No. 42). The Court held a motion hearing on August 28, 2007. Having considered the entire record, and for the reasons that follow, the Court DENIES Plaintiff's motion.

## I. FACTS

Plaintiff Grace Community Church ("Plaintiff") is a Michigan ecclesiastical corporation. (Compl. ¶ 1). Plaintiff is lead by Pastor William Pacey, an ordained minister. Defendant Lenox Township ("Defendant") is a municipal corporation located in Macomb County, Michigan. (Compl. ¶ 2). According to Plaintiff, Defendant has enacted zoning ordinances to control land use activities within its corporate limits. (Compl. ¶ 3).

Plaintiff's mission is to serve all people, but especially those with emotional problems and those who do not fit into the normal church setting. (Pl.'s Br. 3). In 2000, Plaintiff decided to establish a residential home which would provide counseling and support for people in need. (*Id.*). This included assisting those who abuse alcohol and drugs, as well as people with anger

1

management issues. The first facility was set up in the Village of New Haven and housed four men. (Pacey Aff. ¶ 4-5). Eventually, five new homes were added to the program, including a home for women. (*Id*. at ¶ 5).

It is Plaintiff's belief that emotional problems, as well as drugs and alcohol problems, were symptomatic of the lack of "Christ" with a person. (*Id*. at ¶ 7). Until that individual "found Christ," the symptoms would continue. (*Id*.). Thus, Plaintiff focuses on teaching those individuals in the residential program to have a personal relationship with God. (*Id*. at ¶ 6).

Plaintiff purchased the property at issue, a former Catholic Monastery, in order to expand its residential facility and consolidate all of its operations under one roof. (*Id*. at ¶ 8). Plaintiff applied for a special land use permit ("SUP") for the property to establish a church and residential facility, named the Christian Discipleship Center ("CDC"). (Compl. ¶ 4). The application was made for the appropriate SUPs to allow Plaintiff to run a church and the CDC. (Pl.'s Br. Ex. A, Pacey Aff. ¶ 10). Plaintiff appeared before the Lenox Township Planning Commission ("Planning Commission") a number of times in pursuing its permits. (*Id*. at ¶ 12). On April 7, 2005, Pacey wrote to the Planning Commission and described the CDC program as classroom type activities and occasional sports, such as volleyball. (Def.'s Br. Ex. A, Pacey Letter 4/7/05). On June 27, 2005, the Planning Commission approved Plaintiff's church SUP and discussed limiting the CDC SUP to ten to fifteen individuals with no drug or alcohol problems. (Def.'s Br. Ex. C, Planning Commission Minutes 6/27/05). On July 25, 2005, the Planning Commission noted that it had not approved the CDC SUP due to lack of information from Pacey. (Def.'s Br. Ex. D, Planning Commission Minutes 7/25/05). At that meeting, Pacey informed the Planning Commission that there would be no alcohol or narcotic anonymous meetings held at the

facility. (*Id.*).

On July 27, 2005, Defendant's General Counsel Terry Welch sent a letter to the Planning Commission recommending approval of the CDC SUP based partly on Pacey's assurances that he would sign an Affidavit that the project would not be used as a halfway house and would not be used for drug or alcohol rehabilitation. (Def.'s Br. Ex. E, Welch Letter 7/27/05). Welch also recommended approval with strict conditions. (*Id.*). The restrictions included that the facility could never be used as a halfway house or to house person undergoing alcohol and/or drug rehabilitation, that no more than fifteen people in residence, that all residents are pre-screened prior to acceptance, and that if any terms and conditions of the SUP are breached, then it reserves the right to revoke the SUP. (*Id.*).

The Planning Commission approved the CDC SUP with the conditions listed in Welch's July 27, 2005 letter on August 22, 2005. (Def.'s Br. Ex. F, Planning Commission Minutes 8/22/05). In September 2005, Defendant revoked any permits given for the residential facility and prohibited Plaintiff from operating the CDC on the premises. (Pl.'s Br. Ex. A, Pacey Dep. ¶ 13). Defendant claims that the CDC SUP was revoked when the Planning Commission was presented evidence that Plaintiff was operating a drug and alcohol rehabilitation center at the site, an action contrary to statements made by Pacey at prior Planning Commission meetings. (Def.'s Br. Ex. J, Planning Commission Minutes 9/26/05; Def.'s Br. 2, Def.'s Br. Ex. D, F, Planning Commission Minutes). Plaintiff contends that the CDC SUP was revoked on the mistaken belief that drug and alcohol counseling occurred on the site. (Pl.'s Br. 4). Plaintiff continues to use the site as a place of worship and has the SUP to do so.

Plaintiff filed its Complaint on August 7, 2006, alleging violations of the Religious

3

Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and Equal Protection. Plaintiff seeks declaratory, injunctive and monetary relief.

On July 18, 2007, Plaintiff filed and Emergency Motion to Compel Depositions and Answers to Interrogatories and Request for Production of Documents (Dock. No. 25). This motion was referred to Magistrate Judge Virginia Morgan. On August 23, 2007, Magistrate Judge Morgan granted in part and denied in part Plaintiff's Emergency Motion to Compel. In her order, Magistrate Judge Morgan denied without prejudice Plaintiff's request for Defendant to produce letters from Defendant's General Counsel Welch. The request was denied because they letters appeared to be covered by attorney-client privilege. However, Magistrate Judge Morgan ordered Defendant to provide the letters in question to this Court for an in camera review in connection with Plaintiff's summary judgment motion. Plaintiff also requested said letters in its August 13, 2007 Motion to Compel Waived Attorney Client Letters.

The Court reviewed the documents and held a hearing on Plaintiff's Motion to Compel Waived Attorney Client Letters.

At issue in this motion is whether Defendant's accidental disclosure of documents it claims are covered by the attorney-client privilege, are no longer privilege and should be provided to Plaintiff.

Plaintiff argues that because Ms. Turchi, a member of the Planning Commission, produced the documents when she voluntarily handed over a significant number of documents in her personal file, the letters are no longer privileged. Plaintiff also argues, in the alternative, that if the Court finds that the documents were not voluntarily disclosed, the privilege was impliedly

4

waived because the documents were not marked "attorney-client privileged" and were carelessly left in the file by Defendant. Plaintiff also argues that waiver is appropriate under the totality of circumstances test.

Defendant argues that Turchi did not voluntarily disclose any documents, and that the disclosure was inadvertent. Defendant contends that inadvertent disclosure of documents does not waive the attorney-client privilege. Defendant also points out that just because Defendant's passing of privileged documents to Mr. Birchler, a planning consultant for Defendant, does not waive the attorney-client privilege, because he is a third party to whom the communication was made in furtherance of obtaining assistance with regard to matters related to legal services.

## II    ANALYSIS

### A.    Voluntary Waiver

Generally, the "attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *In re* Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996). A client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) (citing *In re* von Bulow, 828 F.2d 94, 104 (2d Cir. 1987)). Of course, the burden of establishing the existence of the privilege rests with the person asserting it. *See In re* Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983).

Plaintiff argues that Turchi voluntarily waived the attorney-client privilege by producing her personal file to Plaintiff. Plaintiff contends that Turchi retained no expectation of privacy in her personal file after providing it to Plaintiff. On the other hand, Defendant argues that Turchi inadvertently disclosed the documents and thus did not waive privilege.

Plaintiff does not support its argument that Turchi voluntarily waived the privilege, and Plaintiff has not proffered evidence showing that Turchi intended to waive the privilege. The logical conclusion is that Turchi either missed the document in her review process, or was not aware of which documents were covered by attorney-client privilege. Thus, the Court finds that the disclosure was inadvertent.

B.      **Inadvertent Waiver**

Federal courts have taken three different approaches on the issue of inadvertent disclosure: the objective approach, the subjective approach and the intermediate approach. Under the objective approach, any disclosure, regardless of intent, constitutes a waiver. *See Underwater Storage, Inc. v. United States Rubber Co.*, 314 F. Supp. 546, 548-49 (D.D.C. 1970). The subjective approach is inapposite to the objective approach; an inadvertent disclosure does not ever constitute a waiver due to the lack of intent to waive the privilege. *See Connecticut Mut. Life Ins. Co. v. Shields*, 18 F.R.D. 448, 451 (S.D.N.Y. 1995). Finally, the intermediate approach is factor-based and requires the Court to balance said factors. The factors to be considered are: 1) the reasonableness of precaution taken in view of the extent of document production; 2) the number of inadvertent disclosures; 3) the magnitude of the disclosure; 4) any measures taken to mitigate the damage of the disclosures; and 5) the overriding interests of justice. *Fox*, 172 F.R.D. at 671; *F.D.I.C. v. Ernst & Whinney*, 137 F.R.D. 14, 17 (E.D. Tenn. 1991).

Plaintiff mainly relies on *U.S. ex rel. Pogue v. Diabetes Treatment Centers of American, Inc.*, 444 F.3d 462 (6th Cir. 2006), where the issue before the court was whether a non-party document provider was able to appeal a district court's order to produce privileged documents. *Id.* at 474. The *Pogue* plaintiff's case was consolidated with cases from at least ten other

6

districts, before a judge in the United States District Court for the District of Columbia. The appeal was heard by the Sixth Circuit Court of Appeals. The Sixth Circuit found that under federal statute, an individual must first be found in civil contempt before it could file an appeal of the discovery order. *Id*.

Plaintiff relies upon Judge Griffin's concurrence, which states that "appellants' inadvertent disclosure of the documents at issue effected a waiver of the privilege." *Id*. at 478. However, in his concurrence, Judge Griffin relied on *In re* Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989), a D.C. circuit case, and applied the objective approach because that was the relevant law in the jurisdiction in which the case was consolidated. "The district court[] properly appl[ied] the relevant law of the District of Columbia." *Id*. Simply stated, the *Pogue* court found that the district court for District of Columbia's decision on the production of privileged materials issue was not clearly erroneous.

While it appears the Sixth Circuit has not adopted any of the approaches, the Court finds to be persuasive, the cases *Fox v. Massey-Ferguson*, 172 F.R.D. 653 (1995), and *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994), which use the intermediate approach.

      a.      Precautionary measures

Defendant claims that the documents were combed thoroughly, but uncovered additional documents, which included the documents at issue, minutes before Turchi's deposition. According to Defendant, prompt review was taken, but one privileged document was inadvertently disclosed. This is not a case where Defendant was aware of these documents for six or seven months and took amount of time to produce them. This is also not a case where a number of privileged documents were disclosed.

Like in *Fox*, the Defendant could have taken further precautions like marking each sheet as confidential or a designation of attorney-client privilege. Precautions taken, however, given the circumstances, *i.e.*, the quick review of the documents, were marginally adequate.

      b.      Number of inadvertent disclosures

There was only one privileged letter disclosed during the Turchi deposition

      c.      Magnitude of disclosure

The disclosure is complete as Plaintiff has read a portion of the document and total confidentiality cannot be restored. However, as privileged by this Court, Plaintiff is prohibited from using them in their pre-trial motions or during the trial.

      d.      Mitigation of damage

The document was not in Plaintiff's possession for very long, and upon realizing the inadvertent disclosure, Defendant promptly retrieved the documents.

      e.      Interests of justice

Defendant contends that fairness weighs in its favor. It argues that it took necessary steps to protect the privilege and did not intend a waiver. Defendant asserts that its mistake in inadvertently producing the documents to its witness was not the action which breached the confidential nature of the document, but rather Plaintiff's action of reading the privileged documents.

The Court finds that the document goes to the very core of the attorney-client privilege and that this factor weighs in favor of Defendant.

Accordingly, based upon the factors of the immediate approach, the Court finds that the document inadvertently disclosed to Plaintiff's counsel at the Turchi deposition is privileged.

### C. Third Party Waiver

Plaintiff argues that a week after Turchi's deposition, Plaintiff took Birchler's deposition. At that deposition, Plaintiff contends that Defendant's general counsel Welch had placed numerous privileged documents on the conference table in front of the seat facing him. Defendant contends that the documents were removed from Birchler's files prior to the beginning of the deposition, and at no time did Plaintiff's counsel see the privileged documents.

During the deposition, Plaintiff's counsel made no statements <u>on the record</u> about Defendant's alleged placement of privileged documents in plain sight. In fact, Plaintiff's counsel had at least two opportunities during the deposition to do so. Early in the deposition, the topic of Mr. Welch removing a couple of letters arose, and Plaintiff's counsel made no mention of the fact that he had viewed the letters prior to the start of the deposition. (Pl.'s Supp. Mot. Ex. 1, Birchler Dep. 15).

> Q: Do I have all your documents here that you brought with you today?
> A: Everything except a couple of letters from Mr. Welch that he removed.
> . . . .
> Q: Were they regarding the application process?
> A: They were –
> Q: Something that occurred during the application of Grace Community Church?
> A: I'd have to go back and look at them again. There were – I assume he felt they were privileged documents that should not be shared with you, I mean, I'm sort of used to the attorneys that I'm working pulling certain documents of theirs out of my file.

*Id*. Additionally, later in the deposition, Defendant's attorney Mr. McGraw specifically identified the letters which were removed from Birchler's file. (Pl.'s Supp. Mot Ex. 1, Birchler Dep. 52).

> Q: Okay. And the only other things you have in your file are the letters that Mr. McGraw has right now from Mr. Welch, correct?

>     A: That's correct, I brought the entire file.
>     MR. McGRAW: Those letters, for the record, are dated September 22nd, '05, November 21, '05, November 28, '05 and August 10th of '07, all drafted by Mr. Welch, the Lenox Township attorney.

*Id.* Again, Plaintiff's counsel had an opportunity to state on the record that the letters were in the open for his review prior to the deposition. However, he failed to do so.

Plaintiff also argues that Defendant waived any privilege by sending the documents to Birchler for his review. In *Fox*, the Court held that "[t]he attorney-client privilege is not waived through a communication to a third party where it is made in furtherance of legal services. 172 F.R.D. at 670 (citing *In re* Grand Jury Investigation, 842 F.2d 1223 (11th Cir. 1987) and *United States v. White*, 617 F.2d 1131 (5th Cir. 1980)). Birchler, in this instance, is a planning consultant for the township and offered opinions as to whether or not certain uses could legally operate in specific location. Thus, his opinion was relied upon and he is consulted with, regarding the legality of property uses. Birchler had a common interest with Defendant, and disclosure to him did not waive the privilege

Accordingly, the Court finds that there was no third party waiver.

## III. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion to Compel.

**SO ORDERED**.

                                                        s/Paul D. Borman  
                                                        PAUL D. BORMAN  
                                                        UNITED STATES DISTRICT JUDGE

Dated: August 31, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 31, 2007.

                                                                        s/Denise Goodine
                                                                         Case Manager